UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MAURICE MARQUIS BRYANT,

                Plaintiff,

v.

UNKNOWN WOODGATE et al.,

                Defendants.

_____/

Case No. 2:24-cv-122

Honorable Maarten Vermaat

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court

will grant Plaintiff leave to proceed *in forma pauperis*.  Pursuant to 28 U.S.C. § 636(c) and Rule

73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this

action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.10; ECF

No. 4.)

      This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a

putative defendant's relationship to the proceedings.

      "An individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Woodgate and Desrochers for failure to state a claim. The Court will also dismiss, for failure to state a claim, the following claims against Defendants King and Plumm: (1) Plaintiff's First Amendment retaliation claim against Defendant Plumm premised upon Defendant Plumm's threat to make Plaintiff's life "hell"; (2) Plaintiff's Fourth Amendment claims; (3) Plaintiff's Eighth Amendment claims; (4) Plaintiff's Fourteenth Amendment claims; and (5) any claims asserted pursuant to the Prison Rape Elimination Act (PREA). Plaintiff's First Amendment retaliation claim against Defendants King and Plumm premised upon issuance of a misconduct ticket to Plaintiff remains in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following URF staff in their official and personal capacities: Sergeant/Correctional Officer Unknown King, Sergeant/Correctional Officer/PREA Coordinator Unknown Desrochers, and Correctional Officers Unknown Woodgate and Unknown Plumm.

Plaintiff alleges that on December 18, 2023, he was subjected to a shakedown by Defendant Woodgate. (Compl., ECF No. 1, PageID.4.) During the shakedown, Defendant Woodgate "touched and fondled [Plaintiff's] anus." (*Id.*) When Plaintiff asked why he did so, Defendant Woodgate stated, "That's where you hide shit." (*Id.*)

On December 26, 2023, Plaintiff was called to Defendant Desrochers' office. (*Id.*) According to Plaintiff, Defendant Desrochers treated Plaintiff's "sexual assault as a job, told [Plaintiff that he] was lying on his officer, [and] told [Plaintiff] he looked at the camera and it showed nothing." (*Id.*) Defendant Desrochers asked Plaintiff to sign off on his PREA complaint. (*Id.*) Plaintiff contends this was "a form of intimidation and retaliation." (*Id.*)

On December 30, 2023, Plaintiff was in the chow line when Defendant Woodgate and another officer made jokes about the shakedown. (*Id.*) According to Plaintiff, Defendant Woodgate and the other officer laughed at him, stating "nice ass" and "it was only a shakedown." (*Id.*) Plaintiff contends the officers made gestures with their hands as well. (*Id.*) He avers that their actions were "degrading and humiliating" and were "a form of retaliation." (*Id.*)

On February 6, 2024, Plaintiff was leaving the chow hall after lunch when he heard Defendant Woodgate and other officers talking about him. (*Id.*, PageID.5.) Plaintiff contends that

they were trying to intimidate him. (*Id.*) Plaintiff heard Defendant Woodgate say, "That's the asshole who wrote the PREA on me." (*Id.*) Plaintiff contends that the officers were "try[ing] to intimidate and harass [him], a form of retaliation." (*Id.*)

On February 8, 2024, Plaintiff submitted a grievance against Defendant Woodgate. (*Id.*, PageID.6.) He contends that Defendant Woodgate worked in Plaintiff's unit for about two hours that day, despite knowing that a PREA complaint had been filed against him for sexual assault. (*Id.*) Plaintiff claims that he "feared for [his] life and safety," and that "it was a form of intimidation and retaliation." (*Id.*)

On February 18, 2024, Plaintiff was told to leave the dayroom. (*Id.*, PageID.5.) Defendant King stated that inmates had to go through the metal detector, and Plaintiff did not do so at first because he had "store items" in his hands. (*Id.*) Non-party Officer Blair told Plaintiff that he did not have to take the food items through the detector if Plaintiff did not want to. (*Id.*) Defendant King then started yelling at Plaintiff, shouting, "Didn't he tell you to take the f***ing food [through] the metal detector." (*Id.*) Plaintiff took the food through the detector a second time. (*Id.*) Defendant King then said, "I'll teach you about writing PREAs." (*Id.*) Defendant King told Defendant Plumm to issue a misconduct ticket for insolence and threatening behavior to Plaintiff. (*Id.*)

Plaintiff claims that during this time, he served as a porter during the second shift. (*Id.*, PageID.6.) The next day, he talked to Defendant Plumm about Defendant King, and Defendant Plumm told Plaintiff to "just sign off the ticket or [Defendant] King [is going to] come after [you]." (*Id.*) Plaintiff alleges that he signed off on the "lie of the ticket." (*Id.*)

On December 20, 2024, Defendant Desrochers called Plaintiff to the control center, where he told Plaintiff that there was "no Step II PREA grievance" and therefore "no chall[e]nging the

decision of a PREA response." (*Id.*) Plaintiff claims that this is contrary to the PREA handbook. (*Id.*) He avers that he never received a PREA response, and that this "is a form of retaliation and intimidation." (*Id.*)

On February 29, 2024, Plaintiff had to ask Defendant Woodgate if he could use the restroom. (*Id.*) Later that day, Plaintiff's cellmate had "an episode" in the housing unit hallway. (*Id.*) Defendant Plumm took Plaintiff out of his cell to sit in the dayroom. (*Id.*, PageID.8.) Plaintiff contends that he missed the chow lines but was given a bag lunch. (*Id.*) While Plaintiff was in the dayroom, non-party Officer Fulgenzy "tore [Plaintiff's] cell in disarray." (*Id.*) Plaintiff claims that only his items, not his cellmate's, were left out of place. (*Id.*) Defendant Plumm told Plaintiff, "Keep writing grievances on me and I'll keep making your prison life hell." (*Id.*) Plaintiff states that "this was a form of intimidation and retaliation for the grievance" he wrote. (*Id.*) Plaintiff asked to speak to the sergeant, "but was almost then taken to the hole for asking for them to tell them about the situation." (*Id.*) Plaintiff later learned that his cellmate had a possible overdose, which is why the cell was "ripped to pieces." (*Id.*) Plaintiff claims that he has seen "many inmates with the same issue [his] bunkie had and [they were] not treated like" Plaintiff was. (*Id.*)

On March 10, 2024, Plaintiff tried to talk to Defendant Woodgate about the issues described above. (*Id.*, PageID.9.) Defendant Woodgate, however, "became aggressive and refused to speak with Plaintiff." (*Id.*) Later that day, during rounds, Defendant Woodgate looked Plaintiff directly in the eyes and told him to either sign off on the PREA complaint or Defendant Woodgate would "continue to make [Plaintiff's] life 'a living hell.'" (*Id.*)

Based upon the foregoing, Plaintiff asserts First Amendment retaliation claims, as well as Eighth Amendment claims, against Defendants. (*Id.*, PageID.9–10.) Plaintiff's complaint can also be construed to assert Fourth Amendment claims premised upon the search of his cell, Fourteenth

6

Amendment due process claims premised upon the misconduct ticket Plaintiff received, Fourteenth Amendment equal protection claims premised upon his statement that he was treated differently than other inmates, and claims pursuant to the PREA itself. Plaintiff seeks declaratory relief, as well as damages. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in both their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich.*

*Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks damages, as well as declaratory relief. (Compl., ECF No. 1, PageID.9–10.) Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

An official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Although Plaintiff is still incarcerated at URF, his complaint is devoid of any suggestions that any of the named Defendants are engaged in ongoing violations of federal law. Accordingly, the declaration that Plaintiff seeks is in no way prospective because Plaintiff simply asks the Court to declare that Defendants' past actions violated the Constitution. Such a retrospective request does not fit within the *Ex Parte Young* exception to sovereign immunity.

For all of these reasons, Plaintiff's official capacity claims will be dismissed in their entirety.

### B.      Personal Capacity Claims

### 1.      First Amendment Retaliation Claims

Plaintiff contends that the named Defendants retaliated against him, in violation of the First Amendment, because Plaintiff filed a PREA complaint and grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references grievances and complaints of sexual assault, both written and verbal. At this stage in the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claims. The Court will address the remaining elements of a First Amendment retaliation claim with respect to the individual Defendants.

### a. Defendant Woodgate

Plaintiff alleges that after he filed his PREA complaint, Defendant Woodgate verbally harassed him. According to Plaintiff, Defendant Woodgate and other officers humiliated him by stating "nice ass" and "it was only a shakedown." (Compl., ECF No. 1, PageID.4.) Defendant Woodgate also spoke about Plaintiff to other officers in Plaintiff's presence. (*Id.*, PageID.5.) Furthermore, Defendant Woodgate told Plaintiff that if Plaintiff did not sign off on the PREA complaint, Defendant Woodgate would continue to make Plaintiff's life "a living hell." (*Id.*, PageID.9.)

The Sixth Circuit has concluded that verbal harassment and minor threats do not constitute adverse action. *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003); *see also Spearman v. Williams*, No. 22-1309, 2023 WL 7000971, at *4 (6th Cir. Jul. 17, 2023) (stating "that verbal abuse, idle threats, and nonphysical harassment of prisoners, standing alone, . . . [does not] constitute an adverse action of constitutional significance"); *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."). Accordingly, because Plaintiff's allegations are not severe enough to rise to the level of adverse action, his First Amendment retaliation claim against Defendant Woodgate will be dismissed.

### b. Defendant Desrochers

Plaintiff suggests that Defendant Desrochers retaliated against him by "[taking Plaintiff's] sexual assault as a joke" and asking Plaintiff to sign off on the PREA complaint. (Compl., ECF No. 1, PageID.4.) Defendant Desrochers also told Plaintiff that he could not appeal a PREA complaint decision, which Plaintiff contends goes against what is stated in the PREA handbook. (*Id.*, PageID.6–7.)

If denying a grievance or PREA complaint was considered adverse action, every denial would give rise to liability for retaliation under the First Amendment. The Sixth Circuit, however, has clearly held that the denial of grievances does not give rise to liability under § 1983. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). Moreover, many courts, including this one, have held that the denial or refusal to process a grievance is not adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (concluding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (finding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim). Plaintiff's First Amendment retaliation claim against Defendant Desrochers will, therefore, be dismissed.

### c.    Defendants King and Plumm

Plaintiff alleges that on February 18, 2024, Defendant King told Defendant Plumm to write Plaintiff a misconduct ticket for insolence and threatening behavior. (Compl., ECF No. 1, PageID.5.) According to Plaintiff, Defendant King directed Defendant Plumm to do so after Defendant King said, "I'll teach you about writing PREAs." (*Id.*) Given Plaintiff's allegations, his

First Amendment retaliation claims against Defendants King and Plumm premised upon the issuance of the misconduct ticket may not be dismissed on initial review.

Plaintiff also suggests that on February 29, 2024, while non-party Officer Fulgenzy was searching Plaintiff's cell, Defendant Plumm told Plaintiff that if Plaintiff kept writing grievances, Defendant Plumm would keep making Plaintiff's prison life "hell." (*Id.*, PageID.8.) As set forth *supra*, however, this sort of idle threat is too vague to rise to the level of adverse action. *See Smith*, 61 F. App'x at 162; *see also Spearman*, 2023 WL 7000971, at *4; *Hardy*, 2018 WL 3559190, at *3. Accordingly, Plaintiff's First Amendment retaliation claim against Defendant Plumm premised upon this threat will be dismissed.

In sum, all of Plaintiff's First Amendment retaliation claims, with the exception of his claims against Defendants King and Plumm premised upon the issuance of the misconduct ticket, will be dismissed for failure to state a claim.

### 2. Fourth Amendment Claims

The Court has construed Plaintiff's complaint to assert Fourth Amendment claims premised upon the search of his cell after his cellmate experienced an alleged overdose. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the United States Supreme Court considered and rejected a Fourth Amendment claim based upon a prison official searching a prisoner's cell and destroying some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Supreme Court disagreed.

First, the Supreme Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Supreme Court then determined that the

official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28. For similar reasons, the Supreme Court held that the Fourth Amendment "does not protect against seizures in a prison cell." *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Here, Plaintiff does not allege that any of his items were seized. Instead, he alleges only that his items were left in disarray after the search. Regardless, under the circumstances alleged in the complaint, applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit the search of Plaintiff's cell. Accordingly, any intended Fourth Amendment claims will be dismissed.

### 3.    Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). For a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of

14

confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

Plaintiff suggests that Defendant Woodgate violated his Eighth Amendment rights by sexually assaulting him. He also asserts that Defendants Desrochers, Plumm, and King violated his Eighth Amendment rights, but does not specify how they allegedly did so. It appears that Plaintiff believes that the denial of his PREA complaint, the search of his cell, the issuance of the misconduct, and the various harassing comments violated the Eighth Amendment.

### a.   Sexual Assault

Plaintiff alleges that on December 18, 2023, Defendant Woodgate conducted a shakedown of Plaintiff's person. (Compl., ECF No. 1, PageID.4.) During the shakedown, Defendant Woodgate "touched and fondled [Plaintiff's] anus." (*Id.*) When Plaintiff asked why, Defendant Woodgate stated, "That's where you hide shit." (*Id.*) Based on the foregoing, Plaintiff contends that Defendant Woodgate violated his Eighth Amendment rights by sexually assaulting him.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment . . . . This is true whether the sexual abuse is perpetuated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted). "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted

cases omitted). However, not "every malevolent touch by a prison guard gives rise to [an Eighth Amendment] cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Here, Plaintiff alleges that the "touch[ing] and fondl[ing]" at issue occurred while Defendant Woodgate was conducting a shakedown of Plaintiff's person. A pat-down or shakedown search is necessarily intrusive, even sexually intrusive. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court noted the following was an "apt description" of such a search: "(T)he officer must feel with sensitive fingers every portion of the prisoner's body. A thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet." *Id.* at 17 n.13.

On several occasions, the United States Court of Appeals for the Sixth Circuit has found no Eighth Amendment violation for pat-down searches and isolated incidents of sexual touching. *See, e.g.*, *Solomon v. Mich. Dep't of Corrs.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis and pressing an erect penis into the prisoner's buttocks, do not rise to the level of a constitutional violation); *Tuttle v. Carroll Cnty. Detention Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (allegation that officer grabbed the detainee's genitals and "squeezed them really hard" during a pat-down search is too "subjective and vague" to state a claim); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (prisoner's claim that an officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not state an Eighth Amendment claim); *see also Berryhill*

*v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual

abuse, two brief touches to his buttocks could not be construed as sexual assault).

Here, although Plaintiff characterizes Defendant Woodgate's conduct as involving

"touch[ing] and fondl[ing]," he alleges no facts that distinguish his case from the facts present in

the foregoing cases. Indeed, Plaintiff alleges no facts that Defendant Woodgate acted in a

degrading manner and made offensive remarks during the shakedown. Plaintiff, therefore, fails to

state an Eighth Amendment claim against Defendant Woodgate based upon inappropriate touching

during the shakedown search.

### b.   Verbal Harassment

Plaintiff appears to suggest that all Defendants violated his Eighth Amendment rights by

verbally harassing him. The use of harassing or degrading language by a prison official, although

unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832

F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004)

(harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth

Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept.

5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth

Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr.

24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*,

No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the

alleged statements, the Eighth Amendment does not afford us the power to correct every action,

statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-

3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are

generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v.

Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a

corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants arising from their alleged verbal abuse.

### c.   Cell Search, Misconduct, and Denial of PREA Complaint

To the extent that Plaintiff premises his Eighth Amendment claims on the denial of his PREA complaint, the misconduct ticket he received, and the search of his cell, he cannot maintain such claims. The filing of an allegedly false misconduct ticket does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001). A single cell search does not amount to an Eighth Amendment violation. *See Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003); *see also Carney v. Johnson*, No. 1:09-cv-598, 2010 WL 3810153, at *2 (W.D. Mich. Sept. 23, 2010). Likewise, the denial of a grievance or PREA complaint does not rise to the level of an Eighth Amendment violation because it does not implicate the minimum civilized measure of life's necessities. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Accordingly, Plaintiff's Eighth Amendment claims premised upon these incidents will be dismissed.

### 4.   Fourteenth Amendment Claims

### a.   Procedural Due Process

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon the misconduct ticket he received for insolence and threatening behavior.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate

process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD.

Insolence is a class II misconduct, whereas threatening behavior is a class I misconduct. *See id.*, Attachs. A, B. With respect to a class II misconduct for insolence, the Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v.*

*Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

In any event, with respect to both misconduct charges, Plaintiff does not allege any facts suggesting that the sanctions imposed affected the duration of his sentence. Nor can he. Plaintiff is serving a sentence imposed in 2017 for a crime committed in 2016. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber= 403577 (last visited July 26, 2024). A prisoner like Plaintiff, who is serving indeterminate sentences for offenses committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered any "significant and atypical deprivations." Indeed, Plaintiff provides no information regarding any sanctions he received as a result of the misconduct ticket. Consequently, for the reasons set forth above, any intended Fourteenth Amendment due process claims premised upon the misconduct ticket will be dismissed.

**b.      Substantive Due Process**

Plaintiff's complaint can also be construed to assert substantive due process claims against Defendants. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process

'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Here, Plaintiff does not allege any facts showing the sort of egregious conduct that would support a substantive due process claim.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments apply to Plaintiff's claims. Accordingly, any intended Fourteenth Amendment substantive due process claims will be dismissed.

### c.    Equal Protection

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment equal protection claims. As set forth *supra*, Plaintiff claims that he has seen "many inmate with the same issue [his] bunkie had and [they were] not treated" like Plaintiff was. (Compl., ECF No. 1, PageID.8.) Specifically, Plaintiff appears to suggest that other inmates did not have their items left in disarray after cell searches.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City*

*of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator. . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Overall, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claims as class-of-one claims, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated. Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### 5.    PREA Claims

The Court has construed Plaintiff's complaint to assert claims under the PREA itself, given his allegations that he did not receive a response and that Defendant Desrochers told him that he could not appeal a PREA complaint decision. Plaintiff, however, "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-

P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))). Accordingly, any intended claims for violation of the PREA will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint against Defendants Woodgate and Desrochers will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against Defendants King and Plumm: (1) Plaintiff's First Amendment retaliation claim against Defendant Plumm premised upon Defendant Plumm's threat to make Plaintiff's life "hell"; (2) Plaintiff's Fourth Amendment claims; (3) Plaintiff's Eighth Amendment claims; (4) Plaintiff's Fourteenth Amendment claims; and (5) any claims asserted pursuant to the Prison Rape Elimination Act (PREA). Plaintiff's First Amendment retaliation claim against Defendants King and Plumm premised upon issuance of a misconduct ticket to Plaintiff remains in the case.

An order consistent with this opinion will be entered.

Dated:   August 13, 2024                           /s/ *Maarten Vermaat*
                                                   Maarten Vermaat
                                                   United States Magistrate Judge