UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MAURICE MARQUIS BRYANT,                          Case No. 2:24-cv-122
#403577

                    Plaintiff,                   Hon. Maarten Vermaat
                                                 U.S. Magistrate Judge
        v.

UNKNOWN WOODGATE, et al.,

                    Defendants.
_____/

## OPINION

### I. Introduction

This Opinion addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies, Plaintiff's objections to the mistakenly issued R. & R., Plaintiff's response in opposition to the Defendants' motion for summary judgment, and Defendants' reply.  (ECF No. 14, 21, 30.)

Plaintiff – state prisoner Maurice Marquis Byrant – filed a verified complaint under 42 U.S.C. § 1983 alleging that the Defendants violated his First, Fourth, Eighth, and Fourteenth Amendment rights, while he was incarcerated at Chippewa Correctional Facility (URF) in Kincheloe, Michigan.  (ECF No. 1.)  Plaintiff filed suit against the following URF staff members: Sergeant/Correctional Officer **Unknown King**, Sergeant/Correctional Officer/PREA Coordinator **Unknown Desrochers**, and Correctional Officers **Unknown Woodgate** and **Unknown Plumm**.  (*Id.*)

On August 13, 2024, the Court issued a Screening Opinion. (ECF No. 5.) In the Opinion, the Court dismissed for failure to state a claim Plaintiff's claim against Defendants Woodgate and Desrochers pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). (*Id.*, PageID.47.) The Court also dismissed, for failure to state a claim, the following claims against Defendants King and Plumm: (1) Plaintiff's First Amendment retaliation claim against Defendant Plumm premised upon Defendant Plumm's threat to make Plaintiff's life "hell"; (2) Plaintiff's Fourth Amendment claims; (3) Plaintiff's Eighth Amendment claims; (4) Plaintiff's Fourteenth Amendment claims; and (5) any claims asserted pursuant to the Prison Rape Elimination Act (PREA). (*Id.*)

Following the Screening Opinion, only Plaintiff's First Amendment retaliation claim against Defendants King and Plumm premised upon the issuance of a misconduct ticket to the Plaintiff remains in the case. (*Id.*)

Byrant's allegations against Defendants King and Plumm were set forth in the Court's August Screening Opinion. There, the Court provided in pertinent part:

> On February 18, 2024, Plaintiff was told to leave the dayroom. (*Id.*, PageID.5.) Defendant King stated that inmates had to go through the metal detector, and Plaintiff did not do so at first because he had "store items" in his hands. (*Id.*) Non-party Officer Blair told Plaintiff that he did not have to take the food items through the detector if Plaintiff did not want to. (*Id.*) Defendant King then started yelling at Plaintiff, shouting, "Didn't he tell you to take the f***ing food [through] the metal detector." (*Id.*) Plaintiff took the food through the detector a second time. (*Id.*) Defendant King then said, "I'll teach you about writing PREAs." (*Id.*) Defendant King told Defendant Plumm to issue a misconduct ticket for insolence and threatening behavior to Plaintiff. (*Id.*)
>
> Plaintiff claims that during this time, he served as a porter during the second shift. (*Id.*, PageID.6.) The next day, he talked to Defendant

2

Plumm about Defendant King, and Defendant Plumm told Plaintiff to "just sign off the ticket or [Defendant] King [is going to] come after [you]." (*Id.*) Plaintiff alleges that he signed off on the "lie of the ticket." (*Id.*)

[. . .]

On February 29, 2024, Plaintiff had to ask Defendant Woodgate if he could use the restroom. (*Id.*) Later that day, Plaintiff's cellmate had "an episode" in the housing unit hallway. (*Id.*) Defendant Plumm took Plaintiff out of his cell to sit in the dayroom. (*Id.*, PageID.8.) Plaintiff contends that he missed the chow lines but was given a bag lunch. (Id.) While Plaintiff was in the dayroom, non-party Officer Fulgenzy "tore [Plaintiff's] cell in disarray." (*Id.*) Plaintiff claims that only his items, not his cellmate's, were left out of place. (*Id.*) Defendant Plumm told Plaintiff, "Keep writing grievances on me and I'll keep making your prison life hell." (*Id.*) Plaintiff states that "this was a form of intimidation and retaliation for the grievance" he wrote. (*Id.*) Plaintiff asked to speak to the sergeant, "but was almost then taken to the hole for asking for them to tell them about the situation." (*Id.*) Plaintiff later learned that his cellmate had a possible overdose, which is why the cell was "ripped to pieces." (*Id.*) Plaintiff claims that he has seen "many inmates with the same issue [his] bunkie had and [they were] not treated like" Plaintiff was. (*Id.*)

On February 12, 2025, Defendants King and Plumm moved for summary judgment on the basis of exhaustion.  (ECF No. 15.)  The Defendants argue that Byrant failed to properly exhaust his administrative remedies because (1) Bryant failed to name either King or Plumm at Step I, and (2) Byrant failed to grieve claims arising out of the February 18, 2024 misconduct ticket.  (*Id.*, PageID.86.)

On April 2, 2025, the undersigned mistakenly issued an R. & R. addressing the Defendants' motion for summary judgment rather than an Opinion, which would be customarily issued in a case where both parties have consented to proceed before a magistrate judge.  (ECF No. 19.)  Having received no objections, the Court issued a Judgment in favor of the Defendants on April 29, 2025.  (ECF No. 20.)  Plaintiff had,

3

however, filed objections to the R. & R., postmarked April 18, 2025, which were received by the Grand Rapids Clerk of Court's Office on April 24, 2025. (ECF No. 21, PageID.182.)  Plaintiff's objections were not received by the Marquette Clerk of Court's Office until May 2, 2025. (ECF No. 26, PageID.233−34.)  Plaintiff's objections were subsequently docketed as filed on the date they were originally received in Grand Rapids − April 24, 2025.  (ECF No. 21, PageID.183.)  Plaintiff then filed a motion to alter judgment, postmarked May 16, 2025.  (ECF No. 23.)  The Court granted Plaintiff's motion to alter judgment on July 21, 2025, and vacated the previous judgment, stating that pursuant to the mailbox rule Plaintiff's objections were timely filed.  (ECF No. 26, PageID.234−35.)  The Court stated it would accept and evaluate the Plaintiff's response in opposition and objections in this Opinion. (*Id.*)

In the opinion of the undersigned, there exists no genuine dispute of material fact as to whether Bryant properly exhausted his administrative remedies.  The record before the Court indicates that he did not.  Therefore, the undersigned **grants** the Defendants' motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212–16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

[1]     The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  However, when the exhaustion issue is intertwined with the merits of a claim, the Seventh Amendment requires a jury trial on the exhaustion issue.  *Richards v. Perttu*, 605 U.S. __, 2025 WL 1698783 (June 18, 2025).

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218−19; *Woodford v. Ngo*, 548 U.S. 81, 90−91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*.  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.*  When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective September 25, 2023).  Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.*, ¶ W.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.*,¶¶ W, CC.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.*,¶ CC.  The Policy Directive also provides the following directions for completing grievance forms: "The

7

issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.*,¶ Y (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.*, ¶¶ JJ.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.*, ¶ LL.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.*, ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.*,¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.  *Id.*, ¶ R.  In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the

grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified if an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues."  *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure.  As the well known proverb states, they cannot have their cake and eat it too.").  However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the

9

PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590−91 (6th Cir. 2017).[2]

## IV. Grievances Identified

The Defendants provided Byrant's Step III Grievance Report with their motion for summary judgment.  (ECF No. 16-6, PageID.101−02.)  The affidavit included with the report states that it "is taken from the Michigan Department of Corrections' (MDOC) database that tracks all prisoner/parolee grievances filed at Step II, which have been responded to at Step III."  (*Id.*, PageID.99.)  The Defendants identify the following six grievances as relevant to Bryant's complaint: URF-24-04-0722-17G (**URF-722**);  URF-24-03-0622-17A  (**URF-622**);  URF-24-03-0615-17a  (**URF-615**); URF-24-03-0443-28e (**URF-443**); URF-24-03-0431-28z (**URF-431**); and URF-24-02-

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

0377-28e (**URF-377**).   (ECF No. 16, PageID.79−80.)  The MDOC's Step III Grievance

Report for Bryant is shown below:



(ECF No. 16-3, PageID.101 (Grievance Report page 1).)



(*Id.*, PageID.102 (Grievance Report page 2).)

In his objections to the mistakenly issued R. & R., Bryant asserts that the

Defendants "mislead [sic] the Court" by failing to submit "any and all relevant and

material evidence and pleadings and grievances."  (ECF No. 21, PageID.172.)

Plaintiff states that Defendants "intentionally withheld the only grievance that is

relevant in this cause." (*Id.*)  Plaintiff says that the Court should have been presented

11

with grievance URF 2402-0392-287 (**URF-392**), which was filed on February 18, 2024.  (*Id.*)

## V.  Analysis

In his verified complaint, Bryant stated that he "used the Grievance process on Correctional Officer Plumm" and that his grievances were "all rejected" and that their "rejection [was] UPHELD" at Step III.   (*Id.* (emphasis in original).)  In their motion for summary judgment, Defendants King and Plumm argue that Bryant has failed to properly exhaust his administrative remedies because: (1) he failed to name either King or Plumm in a Step I grievance that he appealed through Step III; and (2) he failed to grieve claims arising out of the February 18, 2024 misconduct ticket. (ECF No. 16, PageID.86.)  Bryant responds[3] that (1) he has plead sufficient facts in his Step I grievance, (2) the Defendants have engaged in fraudulent conduct, and (3) the Defendants have willfully withheld discovery[4] material.   (ECF No. 21, PageID.179−81.)

---

[3]    Bryant argues the undersigned did not employ the correct standard of law for summary judgment in the R. & R. (ECF No. 21, PageID.177−78 (Plaintiff's Response in Opposition.)   Plaintiff argues that the undersigned should have evaluated the merits of his First Amendment retaliation claim and that he is entitled to prevail on summary judgment because he has set forth sufficient, non-conclusory allegations, to create a genuine dispute of material fact.  (*Id.*)  Bryant notes that he has "identified affirmative evidence that would not only support a jury's verdict in his favor at trial." (*Id.*)  It is crucial to note that in this Opinion, the undersigned is addressing the Defendants' summary judgment motion made on the basis of exhaustion *not* a summary judgment motion made on the merits of the case.  The standards relevant to a summary judgment motion on the basis of exhaustion are discussed at length above.  Plaintiff mistakes the relevant standard at this stage of the case.

[4]    Plaintiff states that Defendants have withheld discovery materials from him in this case.  Notably, a Case Management Order has not been issued.  Discovery has

### 1. URF-392

As of September 25, 2023, MDOC Policy Directive 03.02.130 at ¶¶ P 9 and P 11 states that prisoners wishing to pursue claims that misconducts tickets were retaliatory "must file a grievance on the sole issue of retaliation and it shall not be rejected as a grievance on the hearing decision." (ECF No. 16-2, PageID.92.) Here, Byrant asserts that King and Plumm wrote him a false misconduct ticket for insolence on February 18, 2024. (ECF No. 1, PageID.4.) To exhaust his retaliation claims, Bryant was required to file a grievance concerning the allegedly false misconduct ticket in accordance with MDOC policy. Byrant states that he did file a grievance concerning the Defendants' retaliatory conduct and points to URF-392. (ECF No. 21, PageID.172.)

URF-392 is shown below at Step I:

---

not yet begun. Plaintiff has made no request for early discovery. Defendants are not obligated at this time to turn over discovery material to the Plaintiff.

Date Received at Step I _2-26-24_   Grievance Identifier: |U|R|F|2|4|0|2|  |0|3|9|2|  |2|8|2|

| Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library. |

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| MAURICE Bryant | 483577 | URF | L-347 | 2/18/24 | 2/18/24 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _2/18/24_
If none, explain why. _I DID WHAT c/o King said !.._
_and Officer Blair._
_——— steems from # PREA ———_

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. _on the above date_
_at 10:50 .. approximately ... We were told to leave the_
_dayroom and go through metal detectors. c/o Blair told_
_me I could or don't have to take my food through_
_the metal detector. I didn't at first but c/o Sgt._
_King yelled and made me take my food through and_
_I did .. Then c/o King, Sgt. King stated I'll teach_
_you about writting PREA's and told c/o Plumm to_
_write a ticket on me.. As I've stated in Grievances_
_before I fear for retaliation and my safety_
_at this FACILITY PER POLICY _____
_-03.140 90 calendar day retaliation monitoring --_   Grievant's Signature

RESPONSE (Grievant Interviewed?  ☐ Yes  ☒ No    If No, give explanation. If resolved, explain resolution.)

_See Attached_

| Respondent's Signature _Eicher_ | Date _2-26-24_ | Reviewer's Signature _T Wilk._ | Date _2-27-24_ |
|---|---|---|---|
| Respondent's Name (Print) _Eicher_ | Working Title _GC_ | Reviewer's Name (Print) _T. Wilkins_ | Working Title _ADW_ |

| Date Returned to Grievant _2-28-24_ | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature | Date |

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

(ECF No. 21, PageID.176.)

An examination of URF-392 shows that it was filed on February 18, 2024. (ECF No. 21, PageID.176.)  At Step I, Bryant did grieve both King and Plumm for retaliatory behavior relevant to that underlying his claim in his complaint.  (*Id.*)  It

14

appears that URF-392 was addressed at Step I on the merits and was returned to Bryant on February 28, 2024.  (*Id.*)

However, there is no evidence that Bryant appealed the Respondent's decision at Step I.  Similarly, there is no evidence that Bryant appealed any Step II decision to Step III.  The MDOC's Step III grievance report for Bryant for the relevant time reveals that he did not appeal URF-392 to Step III.  Bryant's Step III grievance report is shown below:

| | Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ✕ | 4/15/2024 | URF-24-03-0431-28Z | 28Z | 8 | 3/1/2024 | ☐ | ☐ | ☐ | ☑ | ☑ | 4/23/2024 |
| | Notes: | | | | | | | | | | |
| ✕ | 4/15/2024 | URF-24-02-0377-28E | 28E | 8 | 2/23/2024 | ☐ | ☐ | ☐ | ☑ | ☑ | 4/23/2024 |
| | Notes: | | | | | | | | | | |
| | 3/19/2024 | URF-24-02-0281-28I | 28I | 8 | 2/9/2024 | ☐ | ☐ | ☐ | ☑ | ☑ | 3/26/2024 |

(ECF No. 16-3, PageID.102 (showing Bryant appealed no grievances to Step III that were filed on February 18).)

In his objections, Byrant alleges that the Defendants engaged in fraud[5] by intentionally withholding URF-392 from the Court.  (ECF No. 21, PageID.172.) Although Bryant alleges in his objections that the Defendants engaged in fraud by

---

[5]    Plaintiff submits no evidence to support his conclusory allegation that the Defendants engaged in fraud or maliciously withheld URF-392.  In their motion for summary judgment, Defendants state only that they had provided the "six grievances arising out of URF which [Bryant] filed at Step I on or after February 18, 2024" that were pursued through Step III, as required for proper exhaustion.  (ECF No. 16, PageID.78.)

failing to attach the grievance to their motion for summary judgment, Bryant does not allege that the Defendants or any member of the MDOC thwarted his ability to properly exhaust URF-392 before the filing of this lawsuit.  Instead, Bryant simply states that he filed the Step I grievance and that it is relevant to the claims in this case.  (*Id.*, PageID.181.)

For an MDOC prisoner to properly exhaust his administrative remedies, he must appeal his Step I grievance through Step III of the grievance appeals process. MDOC Policy Directive (PD) 03.02.130 (effective September 25, 2023).   Policy Directive 03.02.130, ¶ Y states that to provide adequate notice to officials, the grievant must provide facts underlying the issue being grieved including the "names of all those involved" at Step I.  Issues within the scope of review at Step II and Step III appeals are limited to those issues addressed on the merits at each step of the grievance process.  *See id.*; *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019).

Even if the Defendants had presented URF-392 in their motion for summary judgment, there would be no genuine dispute of material fact as to whether Bryant properly exhausted his administrative remedies through that grievance.   While Plaintiff did name both Defendants and the claims in the complaint at Step I, there is no evidence that he appealed the grievance through the grievance process as required.  Thus, Plaintiff has failed to properly exhaust his claims through URF-392.

## 2.  URF-722

Defendants argue Bryant failed to properly exhaust his claims through URF-722 because (1) he failed to name either King or Plumm at Step I; and (2) he failed to grieve any claims against them.  (ECF No. 16, PageID.86.)  Bryant makes no specific arguments regarding URF-722 in either his objections or his response in opposition, stating only that he "did file a Step-1 grievance alleging retaliation."  (ECF No. 21, PageID.181.)

At Step I, Bryant grieved CO Robinson for shaking down his cell and failing to call a sergeant or a shift commander at his request.  (ECF No. 16-3, PageID.107.) Bryant does mention Plumm at Step I, but only to say that Robinson refused to contact him.  (*Id.*)  Bryant makes no mention of King or his retaliation claim against King or Plumm at Step I.  (*Id.*)  The Step I grievance in URF-722 is shown below:

(*Id.* (URF-722 at Step I).)

URF-722 was denied at Step I.  (*Id.*, PageID.108.)  The Respondent found that Robinson completed a "random room search," but had to "respond to a fight during this room search" which resulted in the delay.  (*Id.*)  At Step II, Bryant explained that his grievance should not have been denied and stated that he was "being retaliated against because [he has] a CSC case."  (*Id.*, PageID.105.)  URF-722 was denied at Step II.  (*Id.*, PageID.106.)  At Step III, Bryant argued that the "grievance is so true." (*Id.*, PageID.105.)  URF-722 was denied at Step III.  (*Id.*, PageID.104.)

As stated above, PD 03.02.130 ¶ Y states that to provide adequate notice to officials, the grievant  must provide facts underlying the issue being grieved including the "names of all those involved" at Step I.  Issues within the scope of review at Step II and Step III appeals are limited to those issues addressed on the merits at each step of the grievance process.  *See id.*; *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019).

In the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Byant properly exhausted his claims against Plumm and King  through  URF-722.    At Step I, URF-722 was principally concerned with *Robinson's* shakedown of Bryant's cell.  While Bryant does mention Plumm at Step I, he does not discuss any conduct by Plumm and instead suggests that he wanted Robinson to contact Plumm regarding the cell shakedown.  Bryant makes no mention of King at Step I.  Bryant also does not discuss his First Amendment relation claims against King or Plumm at Step I.

### 3.  URF-622

Defendants argue Bryant failed to properly exhaust his claims through URF-622 because (1) he failed to name either King or Plumm at Step I; and (2) he failed to grieve any claims against them.  (ECF No. 16, PageID.86.)  Bryant does not advance any arguments regarding URF-622 in either his objections or his response in opposition.  (ECF No. 21.)

At Step I, Bryant grieved Robinson for telling him to "beat up and press inmate Hedrick" for his crime.  (ECF No. 16-3, PageID.113.)  Bryant makes no mention of Plumm, King, or his retaliation claims against them in Step I.  (*Id.*)  Bryant's Step I grievance in URF-622 is shown below:



(*Id.* (URF-622 at Step I).)

URF-622 was denied at Step I because Robinson "denied saying anything to Byrant about Prisoner Hendrick" and the Respondent found Robinson credible. (*Id.*, PageID.114.)  At Step II, Bryant stated that Hendrick was a witness and should have been interviewed.  (*Id.*, PageID.111.)  URF-622 was denied at Step II. (*Id.*, PageID.112.)  At Step III, Bryant said that Robinson was "unfit for this job." (*Id.*, PageID.111.)  URF-622 was denied at Step III.  (*Id.*, PageID.110.)

In the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Bryant properly exhausted his administrative remedies through URF-622.  At Step I, URF-622 is principally concerned with Robinson's alleged instruction for Bryant to attack another inmate.  There is no mention of Plumm or King at Step I.  There is no mention of Bryant's retaliation claim against Plumm or King at Step I.

### 4. URF-615

Defendants argue Bryant failed to properly exhaust his claims through URF-615 because (1) he failed to name either King or Plumm at Step I; and (2) he failed to grieve any claims against them.  (ECF No. 16, PageID.86.)  Bryant does not make arguments regarding URF-615 in either his objections or his response in opposition. (ECF No. 21.)

At Step I of URF-615, Bryant grieved CO Woodgate for threatening to "make [his] stay here 'a living hell'" if he did not sign off on a Prison Rape Elimination Act (PREA) grievance.  (ECF No. 16-3, PageID.119.)  Bryant made no mention of Plumm, King, or his retaliation claims against them.  (*Id.*)  URF-615 is shown below:

20



(*Id.* (URF-615 at Step I).)

URF-615 was denied at Step I, as "Woodgate stated he has never made any comments to Prisoner Bryant about any alleged PREA's that he may have filed." (*Id.*, PageID.120.)  At Step II, Bryant stated he still had not received a PREA response and "fear[ed] for [his] life and safety" because of the PREA complaint.  (*Id.*, PageID.117.)  URF-615 was denied at Step II.  (*Id.*, PageID.118.)  At Step III, Bryant stated that "this is a form of retaliation" for previous grievances.  (*Id.*, PageID.117.) URF-615 was denied at Step III.  (*Id.*, PageID.116.)

In the opinion of the undersigned, there exists no genuine dispute of material fact as to whether Bryant properly exhausted his claims against King or Plumm through URF-615.  At Step I, the grievance was principally concerned with Woodgate's alleged threat of retaliation against Bryant.  The Plaintiff makes no

21

mention of King or Plumm at Step I.  Similarly, Bryant makes no mention of his retaliation claim against King or Plumm at Step I.

### 5. URF-443

Defendants argue Bryant failed to properly exhaust his claims through URF-443 because (1) he failed to name either King or Plumm at Step I; and (2) he failed to grieve any claims against them.  (ECF No. 16, PageID.86.)  Bryant did not discuss URF-443 in either his objections or his response in opposition.  (ECF No. 21.)

At Step I, Bryant grieved CO Fulgenzi for shaking down his cell for a long period of time, telling him to sit in the dayroom near Plumm while the cell was searched, and forcing him to miss mealtime.  (ECF No. 16-3, PageID.125.)  Bryant does mention Plumm in this grievance.  (*Id.*)  However, Byrant does not discuss his claim against Plumm related to the issuance of a misconduct ticket.  (*Id.*)  Similarly, Bryant does not mention either King or his retaliation claim against King at Step I. (*Id.*)  URF-443 is shown below:

Date Received at Step I 3-4-24     Grievance Identifier: URF|24|03| |04443| |117|B|

**Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

Name (print first, last) MAURICE BRYANT  Number 403577  Institution URF  Lock Number L-347  Date of Incident 2/29/24  Today's Date 2/29/24

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 2/29/24
If none, explain why. I asked officer Faganzy why did I get my stuffed tossed...

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On the above date at approximately 5:00 pm my (bunkie) Banks 963271 had an episode in the hallway of Lime unit C wing. I was taken out of my cell at approximately 5:08pm till about 7:32pm to sit in the day room by c/o Plumm. I missed chow but was given a (bag lunch) at approximately 7:48pm. c/o Faganzy tore my cell up, looking for I don't know what but tho c/o left my cell in disarray. I feel this is a form of Retaliation from the PREA. I wrote and this Grievance I wrote on c/o Plumm on 2/18/24. I fear for my safety at this facility...

Grievant's Signature

(*Id.* (URF-443 at Step I).)

At Step I, URF-443 was denied.  (*Id.*, PageID.126.)  The Respondent stated that Bryant's "cell was shaken down due to his bunkie having a possible overdose of an unknown substance."  (*Id.*)  Bryant "stated that he wants this grievance to be stopped at Step I, but did not want to sign off on it."  (*Id.*)  At Step II, Bryant argued the shakedown was "a form of retaliation" because he had witnessed previous overdoses and "they were never treated like [he] was."  (*Id.*, PageID.126.)  At Step II, URF-443 was rejected as untimely.  (*Id.*, PageID.124.)  At Step III, Bryant argued that his Step II appeal was timely and its rejection was "retaliation."  (*Id.*)  The Respondent upheld the rejection at Step III.  (*Id.*, PageID.122.)

23

In the opinion of the undersigned, there exists no genuine dispute of material fact as to whether Bryant properly exhausted his administrative remedies through URF-443.  At Step I, the grievance was concerned with the shakedown of his cell by CO Fulgenzi.  While Bryant does mention both Plumm and an allegation of retaliation at Step I, the retaliation alleged in the grievance is not related to the retaliation claim based on the issuance of a misconduct ticket that remains in the case.  Because the retaliation claim mentioned in the grievance is not the retaliation claim present in this case, the claim in this case against Plumm remains unexhausted.  Similarly, King and Bryant's claim of retaliation against him are not mentioned in the grievance at Step I.

### 6.  URF-431

Defendants argue Bryant failed to properly exhaust his claims through URF-431 because (1) he failed to name either King or Plumm at Step I; and (2) he failed to grieve any claims against them.  (ECF No. 16, PageID.86.)  Bryant did not mention URF-431 in either his objections or his response in opposition.  (ECF No. 21.)

At Step I, Bryant stated that he "had to ask the C/O Woodgate, the C/O who sexually assaulted [him] 2 month ago to go to the restroom" and asserted that he "fear[ed] for [his] life, this is a form of intimidation, degradation, and out right retaliation." (ECF No. 16-3, PageID.131.)  Bryant makes no mention of King, Plumm, or the retaliation claim against them.  (*Id.*)  Shown below is URF-431:

24

Date Received at Step I _3-1-24_    Grievance Identifier: |U|R|F|2|4|0|3| |0|4|3|1| |2|8|2|

**Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Maurice Bryant | 403577 | URF | L-347 | 2/29/04 | 2/29/24 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _2/29/24_
If none, explain why.

STEMS FROM P.R.E.A.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. on the above date @ approximately 12:08 I had to ask the C/o Woodgate, the C/o who sexually assulted me 2 month ago to go to the restroom. I fear for my life, this is a form of intimidation, degration, and out right retaliation. I'm afraid of this C/o and once again I fear for my life and safety at this facility. Obviously the facility could care less about the assult...

(*Id.* (URF-431 at Step I).)

At Step I, Bryant's grievance was rejected because it was unsigned in violation of Policy Directive 03.02.130. (*Id.*, PageID.132.) At Step II, Bryant argued that the Policy Directive did not require inmates to sign their grievances and that the rejection was therefore improper. (*Id.*, PageID.129.) The Respondent upheld the rejection at Step II. (*Id.*, PageID.130.) At Step III, Bryant stated "it should of went to the higher ups for a P.R.E.A." (*Id.*, PageID.129.) The Respondent at Step III upheld the rejection. (*Id.*, PageID.128.)

In the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Byrant properly exhausted his administrative remedies through URF-431. At Step I, the grievance was concerned with Bryant's interaction

25

with Woodgate related to restroom use.  There is no mention of King, Plumm, or Bryant's retaliation claim against them at Step I.

### 7.  URF-377

Defendants argue Bryant failed to properly exhaust his claims through URF-377 because (1) he failed to name either King or Plumm at Step I; and (2) he failed to grieve any claims against them.  (ECF No. 16, PageID.86.)  Bryant did not mention URF-377 in either his objections or his response in opposition.  (ECF No. 21.)

At Step I, Bryant grieved Sgt. Desrochers for informing him that "there was no Step II PREA Grievance."  (ECF No. 16-3, PageID.137.)  Bryant makes no mention of King, Plumm, or his retaliation claims against them at Step I.  (*Id.*)  URF-377 is shown below:

(*Id.* (URF-377 at Step I).)

At Step I, URF-377 was rejected under PD 03.03.130 for a failure to attempt resolution with a staff member before filing a grievance.  (*Id.*, PageID.138.)  At Step II, Bryant states that he sent Sgt. Derochers "several kites" about appealing a Step II on a PREA concern.  (*Id.*, PageID.135.)  The Respondent rejected URF-377 at Step II as untimely.  (*Id.*, PageID.136.)  At Step III, Bryant stated that "[t]his facility is so corrupt" and argued his Step II appeal was timely.  (*Id.*, PageID.135.)  The Respondent upheld the rejection.  (*Id.*, PageID.134.)

In the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Bryant properly exhausted his administrative remedies through URF-377.  At Step I, the grievance concerns Sgt. Derochers and his statement that "there [were] no Step II PREA Grievance[s]."  (*Id.*, PageID.137.)  Bryant does not mention King, Plumm, or his claims against them at Step I.

## V.  Plaintiff's Motion for Hearing

In his objections to the undersigned's R. & R., the Plaintiff requests a hearing on fraud allegedly committed by the Defendants.  (ECF No. 21, PageID.179.)  Plaintiff asserts the Defendants have committed fraud by withholding discovery material and evidence, in addition to misleading the Court.  (*Id.*)  The undersigned respectfully **denies** Plaintiff's motion for a hearing on alleged fraud.

As discussed above, no Case Management Order has been issued in the case. Thus, no deadline for discovery has been set.  The discovery period in the case has not yet commenced.  Plaintiff has made no requests for early discovery.

27

Plaintiff's assertion that the Defendants committed fraud seems to be premised on (1) their failure to include grievance URF-392 as an attachment to their motion for summary judgment, and (2) an alleged shakedown of a cell occupied by another inmate – Donald Merritt-El.  (*Id.*, PageID.179−81.)

First, Defendants were under no obligation to attach URF-392 to their motion for summary judgment.  Defendants included six grievances appealed through Step III with their motion but did not include URF-392 because it was not appealed through Step III.  (ECF No. 30, PageID.245−46.)  Further, the Court has considered URF-392 and has concluded that Bryant failed to properly exhaust his administrative remedies through that grievance.

Second, Plaintiff's statements concerning the shakedown of Mr. Merritt-El's cell are ultimately irrelevant to his fraud allegations.  Plaintiff attaches Merritt-El's declaration to his objections and his response in opposition.  (ECF No. 21-1.)  In his declaration, Merritt-El states that he agreed to assist Bryant with his lawsuit.  (*Id.*)  After Merritt-El received Bryant's grievances, he states that on February 16, 2025, his cell (Merritt-El's) was searched and the legal documents belonging to Bryant and several other prisoners were seized.  (*Id.*, PageID.186.)  Merritt-El states that he did not have written notice of the search and later filed a grievance regarding the incident.  (*Id.*)  Merritt-El does not state whether the Defendants' motion for summary judgment was amongst the documents allegedly seized.  (*Id.*)  Ultimately, Merritt-El makes no allegation that either King or Plumm was directly involved with

the shakedown of his cell on February 16, 2025, asserting instead that an officer "Saylers" was involved.  (*Id.*, PageID.186−87.)

## VI.  Plaintiff's Motion to Appoint Counsel

Plaintiff submits a motion to appoint counsel as an attachment to his motion objections to the undersigned's R. & R.  (ECF No. 21-2, PageID.189.)  Plaintiff asks that the Court appoint counsel because "most of my civil pleadings and papers have been unlawfully seized."  (*Id.*)  Plaintiff explains that at times, officers refuse to provide him envelopes, and, at other times, they present him with envelopes weeks late.  (*Id.*, PageID.190.)  Plaintiff says that his legal writer, Merritt-El, is often refused paper by guards.  (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F2d 601, 604−05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion.  *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604−05.  Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *Lavado*, 992 F.2d at 606.

Plaintiff has demonstrated he is capable of navigating the case effectively.  To this point, Plaintiff has filed objections to the mistakenly issued R. & R., advanced arguments through a motion to alter judgment, provided a response in opposition to

the Defendants' motion for summary judgment, and filed an appeal to the Sixth Circuit on his own.  Plaintiff's motion for appointment of counsel is respectfully **denied**.

### VII.  Conclusion

The undersigned hereby **grants** the Defendants' motion for summary judgment and shall dismiss the case.

Dated:  August 27, 2025                    /s/ *Maarten Vermaat*
                                           MAARTEN VERMAAT
                                           U. S. MAGISTRATE JUDGE